## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Kevlin Omar Brown,

               Plaintiff,       Case No. 25-13120

v.                          Judith E. Levy
                                 United States District Judge

Nicole Nelson, *et al.*,

                                 Mag. Judge Anthony P. Patti
               Defendants.

_____/

## OPINION AND ORDER GRANTING APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COST AND DISMISSING THE CASE WITHOUT PREJUDICE

On October 3, 2025, *pro se* Plaintiff Kevlin Omar Brown filed this action under 42 U.S.C. § 1983 against Nicole Nelson, Judge Denise Langford-Morris (Ret.), Judge Cunningham, Case Manager Sarah Hool, and Clerk Josh. (ECF No. 1.) On the same date, Plaintiff filed an "Application to Proceed in District Court without Prepaying Fees or Costs" (*in forma pauperis*). (ECF No. 2). In a separate document, titled "Motion to Proceed In Forma Pauperis," Plaintiff affirms that he is homeless, without income, and unable to pay filing fees. (*Id.* at PageID.12.) For the reasons set forth below, the Court grants Plaintiff's

application to proceed *in forma pauperis* and dismisses this case for failure to state a claim and lack of subject-matter jurisdiction.

## I. Background

This case concerns two state-court cases. Plaintiff alleges that he was convicted in the first case for failure to pay child support, and that he was sentenced to probation and jail time. (ECF No.1, PageID.1, ¶ 1.) He states that in 2010, this conviction was "dismissed" and "removed" from his record by Defendant Judge Langford-Morris. (*Id.* at ¶¶ 2–3.) He asserts that he "was never properly served" and only found out about the case after the Oakland County Friend of the Court "seized more than $10,500 from his bank account without notice or DNA testing." (*Id.* at ¶ 4.) Plaintiff indicates that "[d]uring jail/probation, an officer swabbed him for DNA only after conviction." (*Id.* at ¶ 5.)

Plaintiff alleges that after the "dismissal," a new case was filed against him for $2,000 involving Nicole Nelson. (*Id.* at ¶¶ 6–7.) Plaintiff states that Defendant Sarah Hool (case manager) refused to provide clear information regarding why the case was reopened after dismissal. (*Id.* at ¶ 7.) He further indicates that court clerks have denied him access to dismissal records and necessary information, obstructing his rights as

2

*pro se* litigant. (*Id.* at PageID.2, ¶ 8.) Specifically, Plaintiff asserts that he contacted "Clerk Josh" regarding the dismissal in "Judge Morris'[] courtroom," but "Clerk Josh stated no record exists of dismissal in the court's system." (*Id.* at ¶ 9.) Then, he alleges that he contacted the office of Judge Cunningham's clerk asking for information "on why the case was reopened with a new case number," but the staff refused to provide information stating that Plaintiff "must have an attorney." (*Id.* at ¶ 10.)

Plaintiff lists four counts: Double Jeopardy (Count I); Malicious Prosecution (Count II); Administrative Failure/Denial of Access (Count III); and Due Process Violation (service and DNA testing) (Count IV). (*Id.*) However, Plaintiff's pleading efforts end there; he only lists the title of the claims and fails to provide any facts to support each claim.

In his prayer for relief, Plaintiff requests that his application to proceed *in forma pauperis* be granted, and he seeks injunctive and declaratory relief. Particularly, Plaintiff requests that the Court: (1) open an investigation of his state-court cases; (2) a double jeopardy declaration; (3) a DNA analysis; (4) dismiss or enjoin ongoing state-court proceedings; and (5) order the Oakland County Friend of the Court to account for monies seized. (*Id.*)

3

## II. Application to Proceed *In Forma Pauperis*

Federal courts "may authorize the commencement . . . of any suit, action or proceeding . . . without prepayment of fees . . . by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees." 28 U.S.C. § 1915(a)(1). Plaintiff's application indicates that he has only $40 in his bank accounts and no other sources of income. (ECF No. 2). Given Plaintiff's lack of financial resources, the Court finds that Plaintiff satisfies the requirements under 28 U.S.C. § 1915(a)(1), and his application to proceed without prepayment of fees is granted.

## III. Legal Standard

Because Plaintiff has been given permission to proceed without prepayment of the filing fee, the Court must screen the complaint under § 1915(e)(2)(B) to determine if the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997), *overruled on different grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding that district courts must screen a

complaint filed by an indigent non-prisoner under § 1915(e)(2) "before process is served or the individual has had an opportunity to amend the complaint," given that "[t]he moment the complaint is filed, it is subject to review under § 1915(e)(2)"). "The complaint must be dismissed if it falls within the requirements of § 1915(e)(2) when filed." *McGore*, 114 F.3d at 609; *see Jenkins v. Young*, No. 2:23-cv-13188, 2024 U.S. Dist. LEXIS 117773, at *3 (E.D. Mich. July 3, 2024) (dismissing a case for failure to state a claim after screening the complaint under § 1915(e)(2)).

### III.   Analysis

#### A. Failure to State a Claim

Plaintiff fails to state a claim because he provides only the titles of his claims without any substantive elaboration. To state a claim under 42 U.S.C. § 1983, plaintiffs must establish: "(a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law." *Aarti Hospitality, LLC v. City of Grove City, Ohio*, 350 F. App'x 1, 11 (6th Cir. 2009) (quoting *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003)). Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" as

5

well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)–(3). Rule 8 is intended to give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

"[D]etailed factual allegations" are not required under Rule 8's pleading standard, but the standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citations omitted). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

6

"[A] *pro se* complaint is to be liberally construed and, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This leniency, however, "is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). *Pro se* status does not exempt litigants from meeting basic pleading requirements, nor does it obligate a court to formulate allegations that have not been pleaded. *See Porter v. Genovese*, 676 F. App'x 428, 440 (6th Cir. 2017) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal under the *Twombly-Iqbal* standard. *See Iqbal*, 556 U.S. at 678.

Plaintiff's complaint contains a statement of facts regarding the underlying state-court proceedings. Nonetheless, Plaintiff's pleading efforts end there. He lists only the titles of four counts: Double Jeopardy (Count I); Malicious Prosecution (Count II); Administrative Failure/Denial of Access (Count III); and Due Process Violation (service and DNA testing) (Count IV). (ECF No. 1, PageID.2.) Critically, Plaintiff

fails to show a deprivation of a right secured under the Constitution or federal law caused by a person acting under color of state law. This amounts to less than a formulaic recitation of the elements of a cause of action, but rather bare labels devoid of any factual connection or legal elaboration.

Because Plaintiff does not develop his claims beyond listing their titles, the Court has nothing to analyze. The Court cannot speculate about which facts support which claims, which Defendants are responsible for which alleged violations,[1] or how the elements of each cause of action are satisfied. *See Wells*, 891 F.2d at 594. This deficiency makes it impossible for Defendants to respond to the claims against them and violates the basic principle that defendants are entitled to fair notice of the claims they must defend. *See Twombly*, 550 U.S. at 555. It is not the Court's role to construct Plaintiff's legal theories or to imagine various ways these bare titles might connect to the factual allegations. Without any elaboration from Plaintiff, the Court is left to guess at the

---

[1] Notably, Plaintiff names Nicole Nelson as a Defendant in this lawsuit but fails entirely to explain her involvement in the state-court proceedings.

8

legal and factual basis for each count—a task that exceeds the boundaries of liberal construction. *See Porter*, 676 F. App'x at 440.

While liberal construction requires the Court to read the complaint generously, it does not authorize the Court to manufacture allegations that Plaintiff has not made or to speculate about legal theories he has not articulated. After all, even with a liberal construction, the plaintiff is still the one responsible for what they choose to put in his complaint. *See id.* (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). Thus, because Plaintiff provides only titles to his claims without any factual or legal development, there is simply nothing for the Court to construe, liberally or otherwise.

In sum, Plaintiff's complaint falls below the minimum pleading standards established by *Twombly* and *Iqbal*. The bare claim titles, disconnected from both the factual allegations and any identification of which defendant committed which act, fail to state a claim under § 1983. Accordingly, the case is dismissed for failure to state a claim.

### B. Rooker-Feldman Doctrine Bars State-Court Proceedings Review

The Court has concluded that Plaintiff's complaint fails to state a claim. However, to the extent Plaintiff asks the Court to review the state-court proceedings, the *Rooker-Feldman* doctrine forecloses such review.

Under the *Rooker-Feldman* doctrine, the Court does not have subject-matter jurisdiction to review or reverse orders issued in state-court proceedings. *Raymond v. Moyer*, 501 F.3d 548, 550-51 (6th Cir. 2007) (quotations omitted) (holding that federal district courts lack jurisdiction under *Rooker-Feldman* to review state-court judgments in cases brought by state-court losers). The *Rooker-Feldman* doctrine prevents federal courts from asserting jurisdiction over claims where the state-court decision is the source of the injury. *See Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). "Under this doctrine, federal courts lack jurisdiction to review a case litigated and decided in state court as only the United States Supreme Court has jurisdiction to correct state court judgments." *Evans v. Klaeger*, 12 F. App'x 326, 327 (6th Cir. 2001) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 & n.16).

In the complaint's "Relief Requested" section, Plaintiff requests that the Court: investigate the reopening of his dismissed case and issuance of new case; declare the second prosecution unconstitutional; dismiss or enjoin ongoing proceedings arising from the duplicate charge; order DNA testing to confirm or disprove paternity in the underlying matter; and order Oakland County Friend of the Court to account for the seized money in the amount of $10,500. (ECF No.1, PageID.2.) In essence, Plaintiff requests the Court to review the state-court proceedings related to his child support obligations. These allegations and requests for relief fall squarely within the *Rooker-Feldman* doctrine. As a result, the Court lacks subject-matter jurisdiction over this case.

## C. Domestic-Relations Exception

As explained above, Plaintiff's complaint fails to state a claim. To the extent Plaintiff asks the Court to review the child support and paternity orders rendered in state court, the Court lacks subject-matter jurisdiction under the domestic-relations exception. A review of his prayer for relief reveals that the substance of this action seeks review or modification of state-court domestic-relations proceedings.

The domestic-relations exception has deep roots in American federalism. In *In re Burrus*, the Supreme Court explained that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not the laws of the United States." 136 U.S. 586, 593-94 (1890). The Court reaffirmed this principle in *Ankenbrandt v. Richards*, holding that the exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." 504 U.S. 689, 703 (1992).

The Supreme Court has emphasized, however, that this exception "covers only 'a narrow range of domestic relations issues.'" *Marshall v. Marshall*, 547 U.S. 293, 307 (2006) (quoting *Ankenbrandt*, 504 U.S. at 701). The Sixth Circuit has clarified that the exception deprives federal courts of jurisdiction when "a plaintiff positively sues in federal court for divorce, alimony, or child custody," or seeks to modify or interpret an existing divorce, alimony, or child-custody decree. *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015) (quoting *Catz v. Chalker*, 142 F.3d 279, 292 (6th Cir. 1998)). Thus, if a plaintiff asserts genuine federal claims seeking to vindicate federal statutory or constitutional rights in the context of a domestic-relations dispute, the jurisdictional exception

does not apply—even if the relief sought includes nullification of a domestic-relations decree. *See Alexander v. Porterfield*, 804 F.3d 1198, 1205-06 (6th Cir. 2015).

However, federal courts may appropriately apply the domestic-relations exception to preclude subject-matter jurisdiction where the constitutional claims are conclusory and "a pretense to obtain federal review of domestic relations matters." *Danforth v. Celebrezze*, 76 F.App'x 615, 616-17 (6th Cir. 2003) (per curiam); *see also Stephens v. Hayes*, 374 F. App'x 620, 623 (6th Cir. 2010) ("[W]e decline to exercise jurisdiction over plaintiffs' claims in which the tort action is a mere pretense and the suit is actually concerned with child custody issues."); *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988). Therefore, federal courts lack subject-matter jurisdiction to entertain claims that, "although cloaked in the language of constitutional [violations], attack[] the validity of the state court's judgment in . . . child-custody proceedings and seek[] its nullification as the primary form of relief." *Greenberg v. Slatery*, No. 22-5886, 2023 U.S. App. LEXIS 7334, 2023 WL 2771640, at *2 (6th Cir. Mar. 28, 2023).

Here, a review of Plaintiff's prayer for relief demonstrates, in general, that this case revolves around state-court decisions in domestic-relations proceedings concerning child support obligations and paternity disputes. Specifically, Plaintiff requests that the Court:

- Open an investigation into the reopening of his dismissed case and issuance of a new case;

- Declare the second prosecution unconstitutional;

- Dismiss or enjoin ongoing proceedings arising from the duplicate charge;

- Order DNA testing to confirm or disprove paternity in the underlying matter; and

- Order Oakland County Friend of the Court to account for the seized $10,500.

These requests reveal the true nature of Plaintiff's suit. He asks this Court to review state-court proceedings, dismiss or enjoin state-court actions, and order DNA testing to determine paternity—all matters within the core of state domestic-relations jurisdiction. Plaintiff has thus "positively sued in federal court" seeking to dismiss or modify existing

14

child support or paternity proceedings. *See Chevalier*, 803 F.3d at 797 (quoting *Catz*, 142 F.3d at 292).

The request for DNA testing is particularly instructive. A paternity determination is a perfect example of a domestic-relations matter within the special expertise of state courts. By asking this Court to order DNA testing "to confirm or disprove paternity in the underlying matter," Plaintiff seeks to have a federal court engage in the type of fact-finding and adjudication that state courts routinely perform in domestic-relations cases. This is precisely the sort of involvement the domestic-relations exception prohibits.

Moreover, Plaintiff's requests to "dismiss or enjoin ongoing proceedings" and to "declare the second prosecution unconstitutional" ask this Court to interfere with active state-court proceedings concerning child support enforcement. The suit is actually concerned with child support issues, and Plaintiff seeks relief that would require this Court to "modify or nullify state-court domestic-relations orders on their merits." *See Greenberg*, 2023 WL 2771640, at *2. In other words, in contrast to *Catz*, Plaintiff is "asking the district court to involve itself in the sort of

15

questions attendant to domestic relations that are assumed to be within the special expertise of the state courts." 142 F.3d at 291.

Moreover, unlike the plaintiff in *Alexander*, who presented detailed allegations of a conspiracy involving multiple actors and sought primarily monetary relief, Plaintiff here seeks prospective injunctive relief requiring this Court to superintend ongoing state domestic-relations proceedings. While *Alexander* involved genuine federal claims that merely had domestic-relations implications, this case involves domestic-relations claims cloaked in constitutional language. The constitutional labels—Double Jeopardy, Malicious Prosecution, Due Process—remain undeveloped and appear to be, as the Sixth Circuit described in *Danforth*, "a pretense to obtain federal review of domestic relations matters." 76 F. App'x at 616-17.

The Sixth Circuit's recent decision in *Edelstein v. Flottman* reinforces this conclusion. There, the Circuit affirmed dismissal under the domestic-relations exception where the plaintiff sought relief that would nullify or modify state court custody and divorce orders, making abstention under *Burrus* appropriate. No. 24-3156, 2025 U.S. App. LEXIS 570 (6th Cir. Jan. 10, 2025). Similarly here, Plaintiff's requested

16

relief would require this Court to nullify state court child support and paternity proceedings—precisely the type of relief the domestic-relations exception prohibits.

In sum, Plaintiff's claims fall within the domestic-relations exception to federal jurisdiction. The relief he seeks would require this Court to involve itself in matters "assumed to be within the special expertise of the state courts." *Contra Catz*, 142 F.3d at 291. Accordingly, dismissal for lack of subject-matter jurisdiction is independently warranted.

## D. Judicial Immunity

To the extent Plaintiff seeks injunctive relief against judicial defendants for acts taken in their judicial capacity, such relief is barred by both judicial immunity doctrine and the express terms of 42 U.S.C. § 1983.

Judges are entitled to absolute judicial immunity for their judicial actions except in two narrow circumstances: "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though

judicial in nature, taken in the complete absence of all jurisdiction." *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). Notably, "judicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).

This immunity extends beyond judges themselves. "Quasi-judicial immunity 'extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'" *Draine v. Leavy*, 504 F. App'x 494, 495 (6th Cir. 2012) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). This protection covers court personnel performing functions integral to the judicial process.

Most significantly for this case, Section 1983 itself explicitly prohibits injunctive relief against judicial officers. The statute provides that injunctive relief "shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Massey v. Stosberg*, 136 F.

App'x 719, 720 (6th Cir. 2005) (quoting *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999)). This statutory bar applies even when immunity might not otherwise preclude relief.

Plaintiff seeks only injunctive relief—he requests no monetary damages. His prayer for relief asks the Court to open investigations, declare state prosecutions unconstitutional, dismiss or enjoin ongoing state court proceedings, order DNA testing, and compel accounting from the Friend of the Court. All of this relief is injunctive in nature.

The complaint names as Defendants Judge Langford-Morris, Judge Cunningham, court clerks, and case manager Sarah Hool (Judicial Defendants). All of Plaintiff's allegations concern actions these Defendants took in connection with state-court child support and paternity proceedings. Judge Langford-Morris allegedly dismissed Plaintiff's first case. Judge Cunningham's office allegedly refused to provide information about case reopening. The clerks allegedly denied access to records. Sarah Hool, as case manager, allegedly refused to explain why the case was reopened.

These are judicial or quasi-judicial functions. The judges acted in their judicial capacity when presiding over and making decisions in Plaintiff's child support cases. The clerks and case manager performed tasks integral to the judicial process—maintaining court records, managing cases, and providing information about court proceedings. All Judicial Defendants' actions were "so integral or intertwined with the judicial process" that they fall within the scope of judicial or quasi-judicial immunity. *See Draine*, 504 F. App'x at 495.

Plaintiff makes no allegation that any defendant acted outside their judicial capacity or in the complete absence of jurisdiction. He does not claim the judges lacked subject-matter jurisdiction over child support matters or that any defendant acted in a capacity unrelated to their judicial functions. The actions Plaintiff complains of—presiding over cases, issuing decisions, managing court proceedings, maintaining records—are precisely the type of judicial acts for which immunity applies.

Because Plaintiff seeks only injunctive relief against Judicial Defendants for acts taken in their judicial or quasi-judicial capacity, his claims are barred by both judicial-immunity doctrine and the express

prohibition in § 1983. Even assuming Plaintiff could cure his pleading deficiencies and overcome the domestic-relations exception, he cannot obtain the injunctive relief he seeks against these Defendants. Accordingly, Plaintiff's claims against Judicial Defendants fail to state a claim upon which relief may be granted and must be dismissed on the independent ground of judicial immunity. *See Scott v. Brennan*, No. 10-cv-14176, 2010 U.S. Dist. LEXIS 117884, at *3 (E.D. Mich. Nov. 4, 2010) (dismissing § 1983 complaint seeking injunctive relief against state-court judge); *Fuller v. Roush*, No. 22-12531, 2023 U.S. Dist. LEXIS 176708, at *8-9 (E.D. Mich. Aug. 13, 2023) (dismissing claims against court personnel performing functions integral to judicial process), *report and recommendation adopted by,* 2023 U.S. Dist. LEXIS 175719 (E.D. Mich. Sept. 28, 2023).

## IV. Conclusion

For the reasons set forth above, the case is DISMISSED WITHOUT PREJUDICE under § 1915(e)(2)(B).

IT IS SO ORDERED.

Dated: December 5, 2025          s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 5, 2025.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager